IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BRIDGETT POLLARD,

    Movant,

v.

                                       Cv. No. 2:18-cv-02317-JPM-tmp
                                       Cr. No. 2:14-cr-20285-JPM-01

UNITED STATES OF AMERICA,

    Respondent.

**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**AND**
**ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the motion pursuant to 28 U.S.C. § 2255 (§ 2255 motion") filed by Movant Bridgett Pollard (ECF No. 1), the response of the United States (ECF No. 7), and Pollard's replies. (ECF Nos. 10 & 11.) For the reasons stated below, the Court **DENIES** the § 2255 motion.

I.    **PROCEDURAL HISTORY**

    A.    **Criminal Case No. 2:14-cr-20285-JPM-01**

On October 29, 2014, a federal grand jury in the Western District of Tennessee returned an indictment against Pollard charging her with twelve counts of aiding and assisting in the preparation of false and fraudulent tax returns for the 2008 tax year, in violation of 26 U.S.C. § 7206(2). (Criminal ("Cr.") ECF No. 1.) From December 7, 2015, through December 9, 2015, this Court presided at a jury trial, at which the jury found Pollard guilty as charged.[1] (Cr. ECF

---

[1] This was Pollard's second trial; the first trial ended in a mistrial. (Cr. ECF No. 33.)

Nos. 75, 79 & 81.) The Court conducted a sentencing hearing on March 2, 2016 and sentenced Pollard to a total term of imprisonment of 72 months. (Cr. ECF Nos. 99, 101 & 116.) Pollard filed a notice of appeal. (Cr. ECF No. 106 & 113.)

On appeal, Pollard contended that her sentence was procedurally and substantively unreasonable. *United States v. Pollard*, No. 16-5318 (6th Cir 2017). (Cr. ECF No. 132.) The United States Court of Appeals for the Sixth Circuit affirmed Pollard's convictions and sentence. (*Id.*)

The factual basis for the charges underlying Pollard's convictions is stated in the presentence report ("PSR"):

> 7. In early 2010, the Philadelphia Scheme Development Center (PSDC), located in Philadelphia, Pennsylvania, detected an above average number of tax returns claiming the First Time Home Buyers Credit (FTHBC) had been prepared and filed through Freedom Tax Service, and an investigation into Freedom Tax Service was initiated by the Internal Revenue Service (IRS).
>
> 8. During the tax year of 2009, Bridgett Pollard owned Freedom Tax Service, a business involved in the preparation of tax returns, located at 1470 Britton Rd., Memphis, Tennessee. During that tax filing season, Pollard and her employee, Sonya Harris, prepared 2008 tax returns. Tracy Hill, who was part owner of a previous tax preparation business with Pollard, also prepared tax returns under Pollard's Electronic Filing Identification Number (EFIN) for Freedom Tax Service. Pollard, Hill, and Harris all used Pollard's EFIN to prepare tax returns.
>
> 9. Pollard misrepresented the qualifications for the FTHBC to her clients by telling them they were eligible to claims the FTHBC with only the intention to purchase a house. Pollard persuaded her clients to claim the FTHBC by promising refunds in excess of $7,500.00. In an attempt to conceal her scheme, Pollard failed to review the tax returns with the clients beyond the amount they were to receive as a refund. This failure to review, specifically the FTHBC 5405 form, prevented clients from identifying false items on their tax returns. Some individuals were not aware that Pollard had filed their taxes and thought she merely attempted to secure a home loan for them. Pollard charged $1,000.00 or more per tax return.

10. On January 25, 2010, when first contacted by the IRS regarding this investigation, Pollard met with IRS agents, provided the documentation for the 2008 tax returns, and stated that Freedom Tax Service filed approximately 200 2008 tax returns and that 80% of their clients received a refund. Pollard stated that she paid Harris approximately $12,000.00 to $15,000.00 in cash as an employee of Freedom Tax Service. Harris had to be paid in case because she received disability and would lose her benefits if she were employed. It should be noted that the defendant did not provide any further cooperation in the investigation.

11. On August 25, 2010, Harris met with IRS agents and stated that Pollard specifically instructed her to prepare tax returns claiming the FTHBC for individuals who intended to purchase a house but had not yet purchased a house and to list the value of the house at $75,000.00. By listing the house at a value of $75,000.00, they would receive the maximum credit amount of $7,500.00 Additionally, Pollard would file falsified Schedule C's (business income/expenses claimed) claiming fake business income/losses in order to raise the refund amount received. Harris admitted that she knew Pollard was advising her to prepare false tax returns. After the preparation of the tax returns, Harris would give the information to Pollard to review and then transmit to the IRS.

12. Tracy Hill did not provide a statement to the IRS agents regarding her involvement in this fraudulent income tax scheme.

13. Investigators found that 56% of the 2008 tax returns prepared by Freedom Tax Service claimed the FTHBC resulting in a total amount of $995,964.00 in refunds. The IRS identified the following 15 false income tax returns prepared by Freedom Tax Service with a total tax loss to the government of $106,613.00. These individuals stated that Pollard was the individual who prepared their income tax returns.

| Name of Taxpayer | Date of Event | False Amount Claimed |
|---|---|---|
| Courtney Campbell | 03/12/2009 | $7,500.00 |
| Kelvisha Threlkeld | 04/06/2009 | $7,150.00 |
| Kenneth Hunter | 04/14/2009 | $7,450.00 |
| Veronica Claxton | 04/15/2009 | $7,572.00 |
| Anthony Pogue | 04/15/2009 | $7,103.00 |
| Laura King | 04/30/2009 | $7,143.00 |
| Charletta King | 04/30/2009 | $7,270.00 |
| Latisha Rogers | 05/12/2009 | $6,587.00 |
| Vickie Rogers | 05/12/2009 | $7,500.00 |
| Pauline King | 05/14/2009 | $4,849.00 |
| Larry Henderson | 06/06/2009 | $7,500.00 |

| Willie Henderson | 08/04/2009 | $7,476.00 |
| Tabatha Warren | Date Unknown | $7,500.00 |
| Theron Warren | Date Unknown | $7,500.00 |
| Marquita Mackin | Date Unknown | $6,513.00 |

14. When interviewed by IRS agents, Courtney Campbell, Kelvisha Threlkeld, Kenneth Hunter, Veronica Claxton, Anthony Pogue, Laura King, Charletta King, Latisha Rogers, Vickie Rogers, Pauline King, Larry Henderson, and Willie Henderson, all advised that they did not purchase a home and/or own a business in 2008 that would have qualified them for the FTHBC or Schedule C income.

15. In an effort to determine the full extent of the fraud, IRS agents examined all of the returns filed by Freedom Tax Service for the 2008 tax year. Agents determined that there were a total of 97 returns filed that claimed both FTHBC and Schedule C business income/loss for the 2008 tax year. Four of those returns were excluded from the analysis as they claimed wages. Agents determined an average tax loss per return of $7,107 using the 12 audited returns included in the indictment as well as two amended returns and one rejected return that were determined to have similar false claims. The tax loss estimate for the unaudited returns for 2008 utilizing the average tax loss per return was $596,988. The total tax loss, including the 12 audited returns for the witnesses who testified at trial, rejected and amended returns and unaudited returns is $703,601. Post-trial, agents have conducted interviews with an additional 16 taxpayers to date who filed with Freedom Tax Service. They have verified that they did not purchase a home or own their own business for the 2008 tax year, and were therefore not eligible for those tax credits.

16. Based on the aforementioned information, it appears Pollard is responsible for a total loss amount of $703,601.00

17. On April 13, 2015, Pollard proceeded to trial for the instant offense. During the trial, Pollard was asked if she filed the returns for Courtney Campbell, Vickie Rogers, Pauline King, Laura King, Charletta King, Kelvisha Threlkeld, Kenneth Hunter, Veronica Claxton, Larry Henderson, and Latisha Rogers. Under oath, Pollard denied filing the tax returns for these individuals. All of these taxpayers specifically identified Pollard as the individual they met with at Freedom Tax Service and identified Pollard as the individual who prepared their respective tax returns. Additionally, Pollard testified that she did not receive any additional fees for the preparation of the tax returns. Almost all of the witnesses testified that they paid additional fees directly to Pollard outside of the fees which were directly deposited into her bank account for the preparation of the tax returns.

4

(PSR ¶¶ 4–17.)

### B. Civil Case Number 2:18-cv-02317-JPM-tmp

On May 10, 2018, Movant filed the § 2255 motion alleging that trial counsel performed deficiently by failing to:

1. object to the Court's failure to orally pronounce the reason for certain terms and conditions of supervised release (ECF No. 1 at 4-6),

2. file a motion to suppress certain evidence (*id.* at 7),

3. object to the introduction of prior sworn testimony of Courtney Campbell (*id.* at 9),

4. effectively cross-examine government witnesses during trial (*id.* at 10-11), and

5. properly impeach government witnesses during cross-examination. (*Id.* at 16.)

On September 7, 2018, Pollard filed a reply withdrawing Issue 1. (ECF No. 12 at 1.) That claim will not be further addressed.

## II. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing

6

Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must

7

demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.

---

[2]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

#### 2. Counsel's failure to file a motion to suppress certain evidence. (ECF No. 1 at 7.)

Pollard contends that, rather than filing a motion to suppress, counsel filed a motion in limine seeking to exclude evidence obtained in the warrantless search of Pollard's office and that the motion was denied as untimely. (*Id.*) The United States replies that Pollard's claim is conclusory, failing to state a basis for suppressing any files or what specific files should have been suppressed. (ECF No. 7 at 9.) The United States has provided the affidavit of Pollard's trial counsel, Madeleine Savage-Townes, who replies that the motion was filed "when [Pollard]

9

provided information needed to file the motion." (ECF No. 7-1 at 4.) Savage-Townes also states that she cross-examined the United States' witnesses "as to whether warrants were obtained for the files and all other relevant information needed to expose how the files were obtained." (*Id.*)

Pollard has responded referencing "the twelve client[s'] tax record[s] which were the basis of the government's case against [Pollard], had [Savage-Townes] filed the motion to suppress in a timely manner, it is highly likely that the government would not have been able to present them as evidence and use the testimony of the witnesses the tax documents belonged to."

Pollard's response fails to acknowledge that the evidence was deemed admissible at the previous trial and consisted primarily of tax returns filed with the IRS, introduced as business records. The testimonies of the taxpayers who went to Freedom Tax service to have their taxes filed was clearly admissible. Pollard fails to describe the substance of any records or testimony that would have been inadmissible. Even if timely filed, a motion to suppress business records of the IRS would have been meritless. Pollard cannot demonstrate prejudice from the late-filed motion. Issue Two is without merit and is **DENIED**.

> **3. Trial counsel performed deficiently by failing to object to the introduction of the prior sworn testimony of Courtney Campbell. (ECF No. 1 at 9.)**

Pollard contends that counsel failed to object to the introduction of Courtney Campbell's testimony from the previous trial and thus, failed to preserve the issue for direct appeal. (*Id.*) The United States responds that Pollard fails to articulate any basis demonstrating that the testimony was inadmissible or should have been excluded. (ECF No. 7 at 10.)

Pollard has not provided facts or law supporting any valid objection to the introduction of Campbell's previous testimony. Counsel is not ineffective by failing to raise frivolous objections. Issue Three is without merit and is **DENIED**.

4. **Trial counsel performed deficiently by failing to effectively cross-examine government witnesses. (ECF No. 1 at 10-11.)**

Pollard contends that "counsel's line of questioning" during cross-examination used "harmful and prejudicial words such as 'con artist' and 'scam'" which were detrimental to the defense. (*Id.*) Pollard alleges that, during counsel's cross-examination of prosecution witness Vicki Rogers, "counsel elicited responses that required the witness to repeat everything harmful that she said about [Pollard] during direct examination [ ] at least three to four times." (*Id.*) The United States responds that trial counsel tried repeatedly to undermine Rogers' credibility, an effective trial strategy. (ECF No. 7 at 10.) Attorney Savage-Townes responds that, "[a]s to the cross-examination of Ms. Rogers, [ ] it was the strategy to rebut the testimony of Ms. Rogers with the testimony of [Pollard], whereby [Pollard's] testimony in the first trial proved inconsistencies in Ms. Rogers' statements and to counter the character the Ms. Rogers tried to portray of [Pollard]." (ECF No. 7-1 at 5.) Defense counsel's trial strategy was "interrupted" when Pollard decided that she would not testify at the second trial. (*Id.* at 5.)

The Court has reviewed the entire trial transcript, including counsel's cross-examination of each prosecution witness. (Cr. ECF Nos. 125–27.) Savage-Townes never used the words con artist or scam during cross-examination. During cross-examination, Savage-Townes was able to get all IRS employees to admit that, although the fraudulent tax returns contained Pollard's Electronic Filing Identification Number ("EFIN"), they had no way of knowing if a secretary, rogue employee, or Pollard herself prepared and transmitted the return to the IRS. (*Id.*) Counsel also established through cross-examination that the witnesses who filed fraudulent returns were not solicited by Pollard, but heard about Freedom Tax Service through relatives, friends, and neighbors. (*Id.*)

Based on the Court's review of counsel's cross-examination of all witnesses, Pollard has failed to establish that trial counsel's performance was deficient or that she suffered any prejudice from counsel's performance. Counsel's cross-examination of each witness was thorough in the face of overwhelming evidence of Pollard's guilt. Issue Four is without merit and is **DENIED**.

> 5. **Trial counsel performed deficiently by failing to properly impeach government witnesses during cross-examination. (ECF No. 1 at 16.)**

Pollard contends that trial counsel failed to use favorable evidence from the first trial where "witnesses testified that they were unclear about who was sitting on the other side of the desk – who was really using the codes to submit the returns to the IRS" and did not "ask any questions of the witnesses in regards to that evidence at the second trial." (*Id.*) The United States responds that Pollard fails to acknowledge that each witness was shown a photospread and identified Pollard as the person who prepared the tax return and fails to demonstrate that further cross-examination of the witnesses would have affected the outcome of the trial. (ECF No. 12 at 14.)

As discussed *supra*, Savage-Townes cross-examined each IRS witness about the use of Pollard's EFIN and each witness acknowledged they had no way of knowing if someone else in Pollard's office was using the EFIN to transmit returns. Each tax filer identified Pollard during direct examination. Pollard's vague, conclusory statements of "favorable evidence" without any specific factual support fail to state a viable claim under § 2255. *See Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague,

conclusory, or incredible[.]"). Pollard's speculation fails to establish prejudice or deficient performance. Issue Five is without merit and is **DENIED**.

## IV. CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Pollard's convictions are valid and her motion is **DENIED**. Judgment shall be entered for the United States.

## V. APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). In this case, for the reasons previously stated, Movant's claims lack substantive merit and, therefore, she cannot present a

question of some substance about which reasonable jurists could differ. The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**. If Movant files a notice of appeal, she must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a)(4)-(5)).

**SO ORDERED,** this 9th day of July, 2021.

/s/ Jon P. McCalla
JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE